Good morning, Your Honors. May it please the Court, Daniel Wiedemeyer for Appellant, Mr. Bramwell. The District Court misinterpreted Section 2680C in two ways. First, it misconstrued the phrase, other law enforcement officer, that renders the bulk of the section surplus, surplus, surplus, pluriferous. We can't say cinnamony. I practiced that all morning. And secondly, it misconstrued the term, detention, as meaning simple possession of an item by a law enforcement officer. With regard to your first point, how do you distinguish our Lockheed case then? Because we clearly interpreted other law enforcement officer to mean an FAA. The Lockheed decision, with all due respect to the Court, didn't very clearly articulate the rationale underlying its determination. Nobody said we have to be reasoned. But we did announce a rule. I mean, seriously, you know, we said the rule. So how can we get around that? The rule was premised, if you look at the Lockheed analysis, on two, it cited two cases in support of its holding, the 1500 cases case from the Seventh Circuit and the S. Schoenfeld case from the District Court in South Carolina. Even a cursory reading of those two cases reveals that neither of them address the issue of whether any law enforcement officer falls, can necessarily, falls in or out of the customs and excise arena. But, Mr. Schoenfeld, even if the panel was wrong, aren't we still bound to follow it? Not if the holding was premised, as we submit, on the, we read Lockheed and its citation to those two cases that clearly do not address the issue that we presented in our brief as indicating that the Court was particularly interested in and addressing whether FAA officials constituted law enforcement officers. So because it was a brown cow and not a white cow, it's distinguishable? We were interpreting the phrase other law enforcement officers in the context of the seizure or detention of an airplane. Is that different from a Bureau of Prisons correctional officer? By an agent who is not a customs agent or a tax agent. Right. How is that different from a BOP correctional officer detaining your client's property? There's a distinction between, there are two separate issues implicated in Lockheed. One, as we believe, is whether FAA officials constitute law enforcement officers, notwithstanding the 2680C analysis. Yes. Then, as that analysis is made, the Court then turns, I don't believe they did in Lockheed, but the next step would be to determine, now that we know that an FAA official is a law enforcement officer, does the fact that they were not involved in a customs or excise activity permit immunization of their actions? For damage to the goods or loss of use of the airplane while it is in official custody. How is that different from hanging onto your client's sunglasses, which are just damaged or destroyed in the prison laundry, while they're in the custody of the BOP? We don't believe that the Court in Lockheed got to the second step that I just noted. We believe, based upon the fact that the two cases that it cited did not address this issue. The 1500 Cases case and the S. Schoenfeld case both involved issues that were not identical to either Lockheed or this case. And if you look at page 397 in Lockheed. You didn't hear my question. Maybe I'm not understanding, Your Honor. Let me take another run at my question. My question is a really simple one. I read Lockheed as standing for the proposition that other law enforcement officers means more than customs or excise officers. And that those other officers, which in Lockheed happen to be FAA agents, cannot be liable for damages caused by the detention of goods during the performance of their official duties. That's the rule in Lockheed. Why am I not bound as a member of a three-judge panel by the ruling articulated by our prior three-judge panel in Lockheed? If our position is incorrect and the Court in Lockheed did reach the second question, i.e., whether the law enforcement officers are entitled to immunity even though they're not operating in customs and excise, then Lockheed is binding on that point. And we have to follow. And my client loses. Okay. Our position is that if you look at the analysis in Lockheed, although they certainly did, the Court certainly did state that the actions by these FAA officials were immunized under 2680C, the Court's analysis did not focus on the issue in this case, which is whether even though the result is the same, the analysis is not there on whether any law enforcement activity by any law enforcement officer is immunized. Wasn't the claim in Lockheed that the plaintiff was deprived of the profits that it would have otherwise enjoyed from operating the aircraft on gambling junkets, which it could not realize while the plane was detained in the custody of the FAA? That's correct. And isn't your client's claim that the Bureau of Prisons is responsible in damages for the injury to his property sustained while the sunglasses were in the custody of the Bureau of Prisons? Yes. So brown cow, white cow. I still don't see the difference. As I noted, if the Court finds that the analysis in Lockheed underlying its holding was sufficient to be construed as saying the law of this circuit is all law enforcement officers are immunized even if they're not operating in the customs or excise arena, then subject to a possible distinction I'm going to give in a moment, then we lose. However, there is another way to distinguish Lockheed and other cases from other circuits involving this issue, in that in Lockheed the property that was seized was related to or associated with the alleged violation of law or improper action. As Your Honor noted, in Lockheed the aircraft was where the putative violations of FAA safety regulations took place. In a case involving the seizure of money related to unlawful activity, that money is the fruit of the putatively unlawful activity. In Mr. Bramwell's case, the eyeglasses, the detention of his eyeglasses by the Bureau of Prisons official had absolutely no relationship to the activity that the BOP officials deemed to be inappropriate. Wait a second. I think you're making an argument that in the Lockheed case that it was somehow an NREM proceeding against the aircraft because it was the offending entity because it didn't comply with FAA regulations? No, that's not the point I'm trying to propose, Your Honor. In all of the cases that we discovered involving this exception, the property that was detained had some relationship to the putative violation of law. He was going into ADSEG, right? He was going into ADSEG, so they took his coat, probably some other things, while he was housed there. And sure, the glasses got squashed in the laundry, but that's why they took the coat, right? They did not take the coat to deprive him of his use of it as the result of some inappropriate unlawful activity. It was impounded. No, but they didn't want to steal it. I mean, they took it because he was going to be housed in a different facility and therefore couldn't have the coat with him. If that is how this exception is to be applied, to be interpreted, that any detention of property by any federal law enforcement officer, regardless of whether it's related to any putatively unlawful activity or not, that would seemingly give law enforcement officers a blank check for anything they do, even if the items that they detain have absolutely no relationship to any putative criminal activity. And we would submit that the intent of Congress was not to cast that broad of an immunity net upon the actions of law enforcement officers. If the glasses were not seized, the Bureau of Prisons Guard did not come in and say, you broke our rules, so we're taking your sunglasses, because you broke our rules by having the sunglasses, or you broke our rules by wearing the eyeglasses. The glasses had nothing to do with why he was in trouble. He was in trouble for not getting out of the shower. Would they have permitted him to take sunglasses to administrative segregation? My guess is probably not. We believe they would have. The pertinent regulation, which is at 28 CFR Section 541.21C5, provides that it's entitled personal hygiene, and it says that segregated inmates shall have the opportunity to maintain an acceptable level of hygiene, and staff shall provide, among other things, eyeglasses. Okay. So your argument here is because they were prescription sunglasses, that they were more like reading glasses? No. My argument is, is he had a right to those glasses no matter what he was in trouble for, or no matter why he was in, regardless of the fact that he was segregated. Under this regulation, when they threw him into the special housing unit for the violation of the prison rules, under this regulation, he could say, hey, I need my eyeglasses. I can't see without them. And they would have been required to give them to him. Unless there are any other questions, we would submit back to our time. Thank you, Your Honors. Thank you. May it please the Court. Assistant United States Attorney Vince Farhat for the Bureau of Prisons. Your Honors, we believe that the Court's decision in Lockheed that the Principal enunciated there does control in this case. In the Lockheed decision, this Court joined a majority of the circuits in construing the term any other law enforcement officer to include Federal officers other than just customs and tax agents. Although this Court has not yet directly held in a published opinion that prison officials are covered by detention exception, the Court has recognized in other situations that BOP officials are law enforcement officers in the Roberts case. So are you saying all 1811 officers are therefore covered, or is it broader than the officers listed? Your Honor, what do you mean by 1811 officers? Section 1811 is the provision that identifies who are Federal law enforcement officers. It is our position that at least Bureau of Prison law enforcement personnel, Bureau of Prison employees, are law enforcement officers as that term is understood and should have been defined in the detention exception. So how do you respond then to counsel's argument that the race has to have something to do with the law enforcement mission or focus of the investigation, if I can use that term? Clearly, it is the mission of Bureau of Prison prison guards to maintain and enforce prison regulations in the Bureau. In the Cossack case, the Supreme Court articulated that the term arising under detention or from detention applies to negligent handling of property as well. Bureau of Prison officials are empowered to make arrests to enforce Federal laws and regulations. Their placing of Mr. Bramwell in administrative segregation was clearly attendant to their duties as law enforcement officers. And therefore, of his property, pursuant to BOP regulations, was a detention. You would not draw a distinction, however, between the handling and storage of detained property as in Cossack, whether it's for merely administrative purposes or for, as Mr. Talman has indicated, more direct law enforcement purposes. That's correct, Your Honor. We don't believe that that is a distinction that bears on the facts and the court's decision in this case. Moreover, interpreting the detention exception to include BOP officials is consistent with the canon that waivers of sovereign immunity should be strictly construed in favor of the government. Construing the detention exception to include BOP officials also is consistent with the many Federal statutes that classify BOP employees as law enforcement officials. We believe the interpretation, this interpretation, is also buttressed by the CAFRA amendments, which added an exclusion relating to certain detentions made in connections with forfeitures. The implication of the CAFRA amendments is that the detention exception applies to a broad range of government property detentions because forfeitures are done by many different law enforcement agencies and not just customs and tax situations. In light of the Court's ruling in Lockheed, we believe that the detention exception applies to the BOP officials that detained Mr. Bramwell's property. The district court's judgment dismissing the case should be affirmed. If the Court has any further questions, I would submit on our brief. All right. Thank you both for the argument. This matter will be submitted.
judges: Rymer, Tallman, Leighton